**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**SANDRA PALMER,**

Case No.: 1:26-cv-25579

*Plaintiff,*

*v.*

**JURY TRIAL DEMANDED**

**CLARITY SERVICES, INC.,**

*Defendant.*

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, Sandra Palmer ("Ms. Palmer"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, Clarity Services, Inc. ("Clarity" or "Defendant"), stating as follows:

## PRELIMINARY STATEMENT

1. This is an action for damages brought by Ms. Palmer against the Defendant for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA").

## JURISDICTION AND VENUE

2. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which provides that an action to enforce any liability created under the FCRA may be brought in any appropriate United States district court without regard to the amount in controversy.

3. This Court has personal jurisdiction over the Defendant because the Defendant regularly conducts business in the State of Florida and within this District, and because the acts giving rise to this action occurred within this District.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Ms. Palmer's claims occurred in this District, where Ms. Palmer resides and received her consumer report disclosures at issue.

## PARTIES

### Ms. Palmer

5. Ms. Palmer is a natural person residing in Miami, Miami-Dade County, Florida.

6. Ms. Palmer is a Consumer as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Clarity

7. Clarity is a Delaware corporation, with a principal business address at 475 Anton Boulevard, Costa Mesa, CA 92626.

8. Clarity is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 33324.

9. Clarity is a Consumer Reporting Agency ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

### Clarity Mixes Ms. Palmer's Credit File with an Unrelated Person

10. Around January 5, 2023, Clarity began maintaining a credit file on Ms. Palmer.

11. At some point after it began maintaining a file on Ms. Palmer, Clarity started incorporating credit information belonging to a separate, unrelated consumer into her file.

12. Clarity falsely associated information apparently belonging to an unrelated individual named "Oswaldo Martinez" into Ms. Palmer's credit file.

13. "Oswaldo Martinez" bears a surname entirely different from Ms. Palmer's and is associated with a different Social Security number, date of birth, and address than Ms. Palmer.

14. In addition to the name "Oswaldo Martinez," Clarity incorporated

each of the below into Ms. Palmer's credit file, which information does not belong to Ms. Palmer:

- Date of birth in December 1967;
- Florida driver's license number ending 4660;
- Home address beginning 9462, belonging to another individual;
- Housing status of "rent";
- Months at address: 48;
- Cell phone number ending in 5364;
- Home phone number ending in 5364;
- Work phone number ending in 5759;
- Email address beginning "katelyn…";
- Employer name: "Granny S Helping Hand";
- Employer address: "123 Main Street Miami";
- Occupation: "Kitchen Manager";
- Net monthly income of $3,600;
- Date of next paycheck: 05/19/2023; and
- Credit inquiries by Credit Ninja/FMS and Green Arrow Solutions, both on May 10, 2023.

15. Clarity's file on Ms. Palmer is an example of a mixed file.

16. A mixed file is a credit file that contains information concerning two or more persons rather than the one person about whom it should relate.

17. Clarity caters its consumer reports to subprime lenders, many of whom utilize the personal identifying information maintained by Clarity to verify the identity of credit applicants.

18. Likewise, Clarity incorporates data such as bank accounts and employment information into risk scores that it often provides to certain end-users, upon request.

19. Thus, Clarity's inclusion of credit information and personally identifying information belonging to another consumer has a severe, negative effect on Ms. Palmer's ability to obtain credit, and exposes her confidential information to third parties who never requested a report on her.

20. Clarity has sold at least 15 consumer reports in response to a request for Ms. Palmer's report, since mixing her file.

21. Each of these 15 reports contained at least some of the information outlined in Paragraph 14 above, which Clarity wrongfully associated with Ms. Palmer.

22. Each of these 15 reports was thus inaccurate.

23. Despite such knowledge, Clarity has declined to correct its systems.

24. Clarity knows through dozens, and likely more, prior lawsuits and disputes that its automated systems often erroneously match tradeline and identifying information to an incorrect consumer's credit file based on minimal commonalities.

**Clarity Sells Ms. Palmer's Report Without Permissible Purpose**

25. Clarity, a CRA, has a legal obligation to furnish consumer reports only to those with a permissible purpose to obtain them. 15 U.S.C. § 1681b.

26. Despite that obligation, Clarity sold a consumer report regarding Ms. Palmer – on at least two separate occasions – in response to credit applications submitted under the name of "Oswaldo Martinez."

27. On May 10, 2023, Clarity sold one consumer report each regarding Ms. Palmer to "Credit Ninja/FMS" and Green Arrow Solutions in response to credit applications submitted in the name of "Oswaldo Martinez."

28. These inquiries were associated with a different Social Security number, date of birth, and address than Ms. Palmer's.

29. Ms. Palmer did not know, and in the exercise of reasonable diligence could not have known, that Clarity had sold these reports at the time of these sales.

30. Clarity does not notify a consumer when it sells a consumer report about that consumer, and a report sold in response to a request submitted in another person's name generates no notice to the consumer whatsoever – no adverse-action

notice, no communication from the purchasing lender, and nothing else identifying Ms. Palmer as the subject of the report Clarity furnished. The sole means by which a consumer can learn that such a sale occurred is to request and examine her own consumer file disclosure.

31. Ms. Palmer first discovered these sales on July 28, 2026, upon obtaining and reviewing the Clarity consumer file disclosure.

32. Clarity had no reason to believe it had a permissible purpose to furnish a report on Ms. Palmer to these lenders, which had requested a report concerning an unrelated individual, not Ms. Palmer.

33. There are no meaningful commonalities between Ms. Palmer and "Oswaldo Martinez" that could have justified Clarity's decision to treat a request for one as a request for the other.

34. In selling these reports, Clarity both disclosed Ms. Palmer's confidential, legally protected information to entities that never requested it and incorporated that individual's information into Ms. Palmer's file as though it were her own.

**Additional Inaccuracies in Clarity's Reporting Regarding Ms. Palmer**

35. Clarity, a CRA that predominantly serves the needs of online lenders making short-term loans, programs its systems to acquire and report as much information as possible, with little regard to the quality or accuracy of the data.

36. On or about July 28, 2026, Ms. Palmer requested and obtained a copy of her consumer disclosure from Clarity.

37. Ms. Palmer's review of the disclosure revealed that Clarity was reporting inaccurate, contradictory, and misleading information, as detailed below.

**Driver's License Numbers**

38. Clarity's consumer disclosure to Ms. Palmer dated July 28, 2026 reports two Florida driver's license entries – "XXXXXXXXX5900" and "XXXXXXXXX4660" – each presented in heavily redacted form.

39. The FCRA requires a consumer reporting agency, upon a consumer's request, to "clearly and accurately disclose to the consumer … [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1).

40. Nothing in the FCRA authorizes a consumer reporting agency to redact a driver's license number in a consumer's file disclosure.

41. Because Clarity has masked the majority of the characters in each entry, Ms. Palmer cannot determine from the disclosure whether the license numbers Clarity is reporting reflect her actual Florida driver's license, transpositions or data-entry errors, stale or superseded license numbers, or license numbers belonging to a different consumer altogether.

42. Clarity's disclosure reveals that the first driver's license number was reported from 1/5/23 to 10/31/2023, while the second number was reported on 5/10/2023.

43. Clarity thus reported that Ms. Palmer utilized two distinct driver's license numbers simultaneously.

**Redacted Account Numbers**

44. Clarity's consumer disclosure to Ms. Palmer dated July 28, 2026 reports the account numbers on three of her tradelines, including the Check n Go Payday (two loans) and CBW / CreditFresh tradelines, each in redacted form, showing only the final few digits of each.

45. The FCRA requires a consumer reporting agency, upon a consumer's request, to "clearly and accurately disclose to the consumer … [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1).

46. Nothing in the FCRA authorizes a consumer reporting agency to redact a tradeline account number in a consumer's file disclosure.

47. Because Clarity has masked the account number, Ms. Palmer cannot determine from the disclosure whether the account Clarity reports is in fact her account, whether the balance, status, and payment history Clarity attributes to that number are accurate, or whether the tradeline belongs to a different consumer altogether.

48. Clarity's decision to disclose the account only in redacted form is itself the violation: Clarity did not "clearly and accurately disclose" the contents of her file as 15 U.S.C. § 1681g(a)(1) requires.

**Residential History**

49. Clarity frequently misreported Ms. Palmer's length of residential history, often contradicting itself in its own reporting, as the following examples illustrate.

50. On January 5, 2023 at 8:48:56 AM, Clarity incorporated data reporting Ms. Palmer resided at her address for 24 Months.

51. Just 5 minutes later at 8:53:55 AM, Clarity incorporated data reporting Ms. Palmer had resided at her address for 120 Months.

52. Thus, Clarity's reporting indicates Ms. Palmer gained 8 years of residential history in just 5 minutes, which is impossible.

53. Similarly, on January 5, 2023 at 8:48:56 AM, Clarity incorporated data reporting Ms. Palmer resided at her address for 24 Months.

54. Just 7 minutes later at 8:56:09 AM, Clarity incorporated data reporting Ms. Palmer had resided at her address for 108 Months.

55. Thus, Clarity's report indicates Ms. Palmer gained 7 years of residential history in just 7 minutes, which is impossible.

56. The overlapping and contradictory residential timelines reported by Clarity create a facially inaccurate and frankly nonsensical residential history that violates the mandate of 15 U.S.C. § 1681e(b) and creates the negative and false impression that Ms. Palmer has been unhoused, moves residences frequently, or resides at multiple residences simultaneously.

**Inaccurate Employment Information**

57. Clarity's reporting further demonstrates a basic failure to confirm that data is being placed in the correct section of her credit file. The value "SOCIAL SECURITY" appears in Ms. Palmer's file as both an Employer Name and an Occupation.

58. An employer is a business; an occupation is a job function the consumer performs. These are categorically distinct types of information, and Clarity's own disclosure separates them into distinct sections.

59. The appearance of the same value in both fields is the signature of an intake process that accepts whatever data furnishers transmit without confirming the data is even being placed in the correct field. A reasonable procedure to assure maximum possible accuracy would, at minimum, refuse to populate the Occupation field with values that are obviously company names.

60. Clarity also incorporated "123 MAIN STREET MIAMI FL" as a valid Employer Address in Ms. Palmer's credit file. This is a prime example of Clarity's

use of dummy, placeholder information in a consumer's credit file when a data furnisher fails to input correct data or fails to provide properly formatted data.

61. Notably, none of these addresses includes any ZIP code, an obvious red flag that no real-world address validation could have permitted.

62. Despite information like this being made-up, dummy, placeholder data, Clarity does not disclose this to consumers or to creditors when it sells the data.

63. Clarity's systems are literally programmed to insert false information into consumer credit files in many instances, such as the above, despite the FCRA's mandate to utilize procedures designed to ensure maximum possible accuracy of information.

64. On January 5, 2023 alone, Clarity simultaneously reported three different Net Monthly Income figures for Ms. Palmer: $3,875, $3,900 and $4,000.

65. A person can only have one income at any given moment; reporting materially different income figures for the exact same date is, on its face, so atypical and internally contradictory that the data is virtually assured to be false.

66. No reasonable procedure designed to assure maximum possible accuracy of consumer reports could have permitted these mutually exclusive figures to be reported as if each were accurate.

67. Income is a critical metric used by financial institutions to calculate debt-to-income ratios and evaluate creditworthiness. By reporting inconsistent and internally contradictory income figures for Ms. Palmer, Clarity's file creates a false and misleading picture of Ms. Palmer's financial situation, significantly increasing the likelihood of credit denials, reduced credit limits, or extension of credit on much less favorable, higher-interest terms.

68. Clarity's reporting of Ms. Palmer's pay frequency is internally inconsistent. Clarity's file lists two different pay frequencies for Ms. Palmer – "BIWEEKLY" and "MONTHLY" – even though a consumer is paid on only one schedule at any given time.

69. These pay schedules are mutually exclusive. A person paid weekly is not also paid monthly, and a person paid biweekly (every two weeks) is not also paid semimonthly (twice per month on fixed dates).

70. Clarity's incorporation of contradictory pay-frequency data reflects an absence of data-quality controls and a failure to implement reasonable procedures to assure maximum possible accuracy of its consumer reports.

71. Clarity's file additionally lists facially absurd pay-frequency values for Ms. Palmer: "M" – which is not a recognized payroll designation.

72. Clarity's credit file does not include a legend defining what "M" pay status means.

73. On October 10, 2025, Clarity incorporated data into Ms. Palmer's credit file reporting that her next paycheck would arrive on June 14, 2023 – a date that had already passed more than two years earlier.

74. By definition, a "next paycheck" date refers to a future payday; reporting a date that, on the very day of the report, was already in the past is a logical impossibility on the face of the data.

75. Clarity knew, or in the exercise of any reasonable procedure should have known, that no employed consumer's next paycheck could be scheduled for a day that had already passed when the report was generated. Yet Clarity incorporated this facially absurd placeholder value into Ms. Palmer's credit file and sold it to creditors anyway.

76. The presence of a stale "next paycheck" date is the hallmark of a system that accepts whatever information furnishers send without ever checking whether it makes basic sense.

**Multiple Dates of Birth**

77. A prime example of Clarity's disregard for accuracy is its current reporting of three different dates of birth for Ms. Palmer, each containing a different month, day, and year.

78. A consumer can only have one date of birth; the additional dates Clarity has on file are necessarily false and inaccurate.

79. The harm to Ms. Palmer from this reporting is severe. Date of birth is a core identity field, and Clarity's own proprietary credit scoring system – along with the underwriting models of the subprime lenders to whom Clarity sells consumer reports – treats inconsistencies in identity data as a primary red flag for fraud and identity theft.

80. A consumer file showing three different dates of birth is, by design, scored as a high-risk applicant whose identity cannot be reliably established. The result is materially lower credit scores, denials of credit, and credit offered only on substantially less favorable terms – consequences Ms. Palmer suffered as a direct result of Clarity's reporting of false birth dates that no reasonable procedure designed to assure maximum possible accuracy of consumer reports would have permitted.

81. The conflict is not a near-miss. The oldest and youngest birth dates Clarity reports for Ms. Palmer reflect a birth year of 1960 and a birth year of 1996 – 36 years apart. These are not entries that differ by a transposed digit or a single mistyped year; a gap of 36 years is a full generation, and describes two people of two different generations.

82. No human being can have been born in both 1960 and 1996, and the gap between them is far too wide to be the innocent mistyping of a single consumer's birth year.

83. No reasonable procedure designed to assure maximum possible accuracy of consumer reports, as required by 15 U.S.C. § 1681e(b), could have permitted a 36-year spread in a consumer's reported date of birth.

84. Clarity has sold at least 15 consumer reports since January 5, 2023, when most of the above inaccuracies appeared in Ms. Palmer's Clarity file.

85. Each of these 15 reports contained at least some of the inaccurate information outlined above, which Clarity wrongfully associated with Ms. Palmer.

86. Each of these 15 reports was thus inaccurate.

87. As noted above, Clarity does not notify consumers when it sells a report on them.

88. As such, Ms. Palmer learned that Clarity sold these inaccurate reports upon obtaining her Clarity disclosure on July 28, 2026.

**Clarity Fails to Meaningfully Disclose Legally Required Information**

89. As set forth above, on or about July 28, 2026, Ms. Palmer requested a copy of her consumer credit disclosure from Clarity.

90. Upon receipt of Ms. Palmer's request, Clarity was required to disclose all information "clearly and accurately" in the credit file, including the identity of each person who obtained a consumer report within the prior year. *See* 15 U.S.C. § 1681g(a)(3)(A)(ii).

91. The FCRA defines "Identification" as "the name of the person or, if applicable, the trade name (written in full) under which such person conducts business." *See* 15 U.S.C. § 1681g(a)(3)(B)(i).

92. Frequently, Clarity fails to fulfill its legal obligations regarding disclosure of this data, often disclosing what can be fairly called incomprehensible information which virtually no one would comprehend.

93. For example, Clarity's disclosure shows an inquiry made on March 6, 2026 which Clarity identified to Ms. Palmer only as "QuillBank/RISE/ElevatePrescreen."

94. Even crediting that Ms. Palmer might recognize "RISE" as a consumer lender, the disclosure still fails its statutory purpose: Ms. Palmer cannot tell from this entry whether "RISE" actually obtained her consumer report or whether "QuillBank" and "ElevatePrescreen" did.

95. "QuillBank" and "ElevatePrescreen" are obscure trade names that no reasonable consumer would recognize.

96. The FCRA requires identification of *each* person who obtained a consumer report, *see* 15 U.S.C. § 1681g(a)(3)(A)(ii); partial identification of one bundled name is not compliance.

97. Whether bundled with a recognizable name or composed entirely of opaque abbreviations, none of these disclosures provided Ms. Palmer with the

address, phone number, or other contact information that would allow her to identify which entity actually obtained her consumer report or to follow up with that entity directly.

98. Multiple consumers have previously sued Clarity for failing to disclose the names of entities obtaining credit reports as legally required.

99. Despite this, Clarity has yet to correct its disclosure template to properly identify the entities actually obtaining a consumer's reports.

100. Clarity's failure to properly identify these entities is thus willful.

101. The failure of a person to provide accurate and truthful information as required by law creates an injury-in-fact, thus creating standing pursuant to Article III. *See, e.g., Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982) (holding that alleged injury to a plaintiff's statutorily created right to truthful information was a cognizable injury in and of itself, regardless of whether the plaintiff actually intended to use the information for its primary purpose; therefore "the Art. III requirement of injury in fact [was] satisfied.").

102. Further, the lack of accurate, full disclosure of who had obtained her credit report caused Ms. Palmer great frustration and emotional distress and made her concerned she was the victim of fraud or identity theft.

**<u>Clarity's Lack of Standards Constitute Willful Violations of the FCRA</u>**

103. Clarity operates in stark contrast to its parent company, Experian.

104. While Experian enforces Metro 2 guidelines – industry standards which contain hundreds of pages of explanation on how to report information, covering almost any conceivable scenario, and which is used by other large CRAs and serves as a lingua franca – Clarity requires no such compliance with Metro 2 guidelines and has no discernible quality-assurance standards.

105. In place of an industry-standard data-quality framework, Clarity's operative "standard" is to ingest and republish whatever data its furnishers transmit, without applying even rudimentary validity checks.

106. Clarity's file on Ms. Palmer is the direct product of that approach: it incorporates and sells information that is not merely unverified, but facially impossible – information that no reasonable data-quality procedure could have permitted to enter a consumer report.

107. The inaccuracies in Ms. Palmer's file are not isolated transcription errors traceable to a single furnisher.

108. They span multiple categories of the data Clarity reports – including consumer identity, date of birth, date of next paycheck, employer address, months at address, net monthly income, pay frequency, and phone-number information – and they share a common signature: each is the kind of error that a single, elementary validity check would have caught before the data was incorporated into Ms. Palmer's file and sold to creditors.

109. Clarity instead operates a system designed to accept and resell that data as if it were genuine.

110. Clarity is not unaware that this is occurring.

111. Clarity has been the subject of repeated FCRA litigation arising from the same categories of inaccuracy described in this complaint – multiple or facially impossible dates of birth on a single consumer's file, invalid driver's license entries, continued acceptance of identity data from demonstrably unreliable furnishers, opaque or bundled inquiry disclosures, contradictory residential and employment histories, the wholesale incorporation of placeholder or impossible data, and the incorporation of facially improbable or commingled identifying information.

112. Despite this notice, Clarity has continued to operate its systems in materially the same way, without implementing the basic validity checks that would have prevented the errors complained of here.

113. Clarity's decision to forgo the quality controls used by its parent company and by other major consumer reporting agencies, in the face of repeated notice that this decision causes ongoing harm to consumers, constitutes a reckless disregard for the rights of the consumers whose data it sells, including those of Ms. Palmer.

114. Ms. Palmer has hired the undersigned law firm to represent her in this matter and has assigned the firm her right to fees and costs.

**COUNT I**
**CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)**

115. Ms. Palmer adopts and incorporates paragraphs 1 through 114 as if fully stated herein.

116. Clarity willfully violated 15 U.S.C. § 1681e(b) when it failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports sold regarding Ms. Palmer, as Clarity sold consumer reports containing the inaccurate information outline herein, including information belonging to another, unrelated consumer.

117. Clarity has been sued on numerous occasions for very similar situations and knows that it frequently sells reports with erroneous information about consumers.

118. Clarity's conduct was thus willful or done with a reckless disregard for Ms. Palmer's rights under the FCRA.

119. As a result of its conduct, Clarity is liable to Ms. Palmer for the greater of Ms. Palmer's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

WHEREFORE, Ms. Palmer respectfully requests this Honorable Court enter judgment against Clarity for:

a. the greater of Ms. Palmer's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. such other relief that this Court deems just and proper.

**COUNT II**
**CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)**
**(Pled in the Alternative to Count I)**

120. Ms. Palmer adopts and incorporates paragraphs 1 through 114 as if fully stated herein, and pleads this count strictly in the alternative.

121. Clarity owed Ms. Palmer a legal duty to utilize reasonable procedures to assure the maximum possible accuracy of its consumer reports regarding Ms. Palmer.

122. Clarity breached this duty when it sold consumer reports containing the inaccurate information outline herein, including information belonging to another, unrelated consumer.

123. Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681e(b), and Ms. Palmer is entitled to her actual damages, attorneys' fees, and costs, pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Palmer respectfully requests this Honorable Court enter judgment against Clarity for:

a. actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c. such other relief that this Court deems just and proper.

**COUNT III**
**CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)**

124. Ms. Palmer adopts and incorporates paragraphs 1 through 114 as if fully stated herein.

125. Clarity violated 15 U.S.C. § 1681g(a)(1) when it failed to clearly and accurately disclose all the information it had in its file by providing Ms. Palmer with a redacted version of her Consumer Disclosure, including by redacting her bank account numbers in the Accounts section of the disclosure while simultaneously publishing those same bank account numbers in full – alongside the corresponding routing numbers and institution names – in the Banking Information section of the very same document.

126. Clarity has been notified through litigation that its disclosures to consumers fail to properly disclose this information.

127. Clarity's conduct was thus willful and intentional, or, alternatively, was performed with reckless disregard for its duties under the FCRA.

128. As a result of its conduct, Clarity is liable to Ms. Palmer for the greater of Ms. Palmer's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, reasonable attorneys' fees, and costs, per 15 U.S.C. § 1681n.

WHEREFORE, Ms. Palmer respectfully requests this Honorable Court enter judgment against Clarity for:

a. the greater of Ms. Palmer's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. such other relief that this Court deems just and proper.

## COUNT IV
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(1)
**(Pled in the Alternative to Count III)**

129. Ms. Palmer adopts and incorporates paragraphs 1 through 114 as if fully stated herein, and pleads this count strictly in the alternative.

130. Clarity owed Ms. Palmer a legal duty to accurately disclose all the information in her credit file upon her request.

131. Clarity breached this duty when it provided Ms. Palmer with a redacted version of her Consumer Disclosure and, in particular, when it redacted her bank account numbers in one section of that disclosure while publishing those same bank account numbers in full in another section of the same document.

132. Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(1), and Ms. Palmer is entitled to her actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Palmer respectfully requests this Honorable Court enter judgment against Clarity for:

a. actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c. such other relief that this Court deems just and proper.

**COUNT V**
**<u>CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)</u>**

133. Ms. Palmer adopts and incorporates paragraphs 1 through 114 as if fully stated herein.

134. Clarity violated 15 U.S.C. § 1681g(a)(3)(A)(ii) when it failed to

identify each person, including the end-user, that procured Ms. Palmer's consumer report during the one-year period preceding the date upon which she made the request.

135. Clarity is aware that its consumer disclosures fail to properly identify end-users via multiple consumer lawsuits.

136. Clarity's conduct was willful, intentional, and exhibited a reckless disregard for its duties to provide clear and accurate disclosures.

137. As a consequence, Clarity is liable to Ms. Palmer for the greater of Ms. Palmer's actual damages or statutory damages of up to $1,000 for each occurrence, punitive damages, and reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Ms. Palmer respectfully requests this Honorable Court enter judgment against Clarity for:

a. the greater of Ms. Palmer's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. such other relief that this Court deems just and proper.

## COUNT VI
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)
**(Pled in the Alternative to Count V)**

138. Ms. Palmer adopts and incorporates paragraphs 1 through 114 as if fully stated herein, and pleads this count strictly in the alternative.

139. Clarity owed Ms. Palmer a legal duty to disclose the identity of each user that obtained her consumer report within one year of Ms. Palmer's request.

140. Clarity breached this duty when it failed to identify each person, including end-users, who procured Ms. Palmer's consumer report.

141. Clarity's breach amounts to a negligent violation of 15 U.S.C. § 1681g(a)(3)(A)(ii), and Ms. Palmer is entitled to her actual damages, attorneys' fees, and costs pursuant to 15 U.S.C. § 1681o.

WHEREFORE, Ms. Palmer respectfully requests this Honorable Court enter judgment against Clarity for:

a. actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c. such other relief that this Court deems just and proper.

**COUNT VII**
**WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(a)(3)**

142. Ms. Palmer adopts and incorporates paragraphs 1 through 114 as if fully stated herein.

143. Clarity violated 15 U.S.C. § 1681b(a)(3) when it furnished two consumer reports regarding Ms. Palmer, one each to Credit Ninja/FMS and Green Arrow Solutions in response to credit applications submitted in the name of "Oswaldo Martinez" – applications that concerned a different, unrelated individual and not Ms. Palmer.

144. Clarity had no reason to believe it had a permissible purpose to furnish reports regarding Ms. Palmer.

145. Clarity knows, through complaints from other consumers, that its automated systems often provide data about unrelated consumers in response to requests for reports by lenders.

146. Clarity's conduct was willful, intentional, and/or exhibited a reckless disregard for its duties under the FCRA.

WHEREFORE, Ms. Palmer respectfully requests this Honorable Court enter judgment against Clarity for:

a. the greater of Ms. Palmer's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and

d. such other relief that this Court deems just and proper.

**COUNT VIII**
**NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681b(a)(3)**
**(Pled in the Alternative to Count VII)**

147. Ms. Palmer adopts and incorporates paragraphs 1 through 114 as if fully stated herein, and pleads this count strictly in the alternative.

148. Clarity had a legal duty to Ms. Palmer to only sell consumer reports to those persons with a permissible purpose to obtain the reports.

149. Clarity breached this duty when it furnished two consumer reports regarding Ms. Palmer, one each to Credit Ninja/FMS and Green Arrow Solutions in response to requests concerning a different, unrelated individual.

150. Clarity's breach entitles Ms. Palmer to her actual damages, reasonable attorneys' fees, and costs.

WHEREFORE, Ms. Palmer respectfully requests this Honorable Court enter judgment against Clarity for:

a. actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2); and

c. such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on August 15, 2026, by:

**SERAPH LEGAL, P. A.**

/s/ *Bryan Geiger*
Bryan Geiger, Esq.
Florida Bar No.: 119168
BGeiger@seraphlegal.com
Service@seraphlegal.com
3505 E. Frontage Rd., Suite 145
Tampa, FL 33607
Tel: 813-567-1230
Fax: 855-500-0705
*Attorneys for Plaintiff*